```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND
```

MINH VU HOANG, et al.        :

    v.                         :   Civil Action No. DKC 12-1393

GARY ROSEN, et al.           :

**MEMORANDUM OPINION AND ORDER**

On May 10, 2005, Minh Vu Hoang filed a voluntary petition under chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Maryland. Her husband, Thanh Hoang, separately filed a chapter 11 petition on July 12, 2005. Both cases were subsequently converted to chapter 7 and the bankruptcy court ordered that the estates be jointly administered. Gary Rosen was appointed as the chapter 7 trustee.[1]

On December 2, 2005, Washington Mutual Bank, on behalf of itself and its assignees and/or successors in interest, filed in the bankruptcy case a motion for an order granting relief from the automatic stay. Washington Mutual asserted that it was "the current payee of a promissory note secured by a deed of trust" upon the Hoang's residence, located at 9101 Clewerwall Drive in

---

[1] A more complete recitation of the issues arising in the bankruptcy case was set forth in *In re Hoang*, --- B.R. ----, 2012 WL 832816 (D.Md. Mar. 9, 2012).

Bethesda, Maryland ("the Property"); that Mr. and Mrs. Hoang were in default for "3 monthly payments of $6,274.90" and "2 late charges of $279.45"; and that it had "elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed," but was prevented from doing so by the automatic stay. (Bankr. No. 05-21078, ECF No. 268, at ¶¶ 3, 5, 6). The bankruptcy court granted that motion on June 1, 2007, lifting the stay as to the successor in interest to Washington Mutual Bank as holder of the promissory note, Quantum Servicing Corporation ("Quantum"). (Bankr. No. 05-21078, ECF No. 785). The order further provided that the stay would remain in effect until February 28, 2008, upon the following conditions:

> 1. The Trustee shall tender adequate protection payments to Movant in the amount of $125,498.00 which represents payments from January, 2006 through April, 2007 within five (5) days of the entry of this Order[;]
>
> 2. By not later than February 12, 2008, the Trustee shall tender to Movant a lump sum equal to all monthly mortgage payments owing for May, 2007 through February, 2008[; and]
>
> 3. The Trustee shall have instituted and diligently pursued such proceedings as are necessary to secure possession of the property in anticipation of the marketing and sale of the property[.]

(*Id.*). When the trustee failed to make the required payment by February 12, 2008, Quantum filed a notice of secured creditor's

2

right to commence foreclosure proceedings, advising that it was exercising its "right to commence foreclosure proceedings pursuant to the deed of trust dated May 9, 1990, . . . by virtue of the lifting of the stay of 11 U.S.C. § 362(a)." (Bankr. No. 05-21078, ECF No. 965).

On January 12, 2011, Mrs. Hoang filed a "motion for abandonment of estate property and debtors' residence." (Bankr. No. 05-21078, ECF No. 1586). She asserted that, on or about November 30, 2010, she received a notice of intent to foreclose from the loan servicer, SN Servicing Corporation, advising that the loan had been in default since April 10, 2007, and that the successor in interest to Quantum, Citigroup Global Markets Realty Corp., was owed a total of $1,103,740.92 as of January 14, 2011, plus interest accruing at the rate of $152.87 *per diem*. She promptly requested mitigation of this debt, asserting her belief that "once this bankruptcy case [is] closed we should have cash to pay off the mortgage loan of Citigroup Global Markets Realty Corp." (Bankr. No. 05-21078, ECF No. 1586-3, Ex. B). Mrs. Hoang asked the court to "compel the Trustee to abandon the Debtor's residence under Rule 6007(b) and 11 [U.S.C.] § 554." (*Id.* at 2). The bankruptcy court granted that motion by an order dated February 28, 2011. (Bankr. No. 05-21078, ECF No. 1607).

On February 4, 2011, a deed of appointment of substitute trustees was recorded "by and between Citi Property Holdings Inc. and Cindy R. Diamond and Bruce D. Brown, Substitute Trustees." (ECF No. 2-5). This document referenced "a Deed of Trust dated May 4, 1990 from Thanh Hoang and Minh-Vu Hoang to Randy Weiss, Esq., Trustee[]," which "was given to secure a loan evidenced by a Promissory Note in the amount of One Million and 00/100 Dollars ($1,000,000.00) dated May 4, 1990, payable to Home Savings of America, F.A." (*Id.*). Pursuant to the deed of trust, which "gives the irrevocable power to appoint Substitute Trustees to the holder of the Note," Citi Property Holdings, Inc. ("Citi Property"), "as holder of the Note . . . appoint[ed] Cindy R. Diamond and Bruce D. Brown as Substitute Trustees." (*Id.*).

Soon thereafter, an affidavit of right to foreclose and statement of deed of trust debt was filed in the Circuit Court for Montgomery County, Maryland, by Cynthia Burger, an "Asset Manager of SN Servicing Corporation, servicing agent for Citi Property," asserting the right to foreclose on the Property based on a review of "the files of Citi Property . . . , the holder of the Deed of Trust between Thanh Hoang and Minh-Vu Hoang and Cindy R. Diamond and Bruce D. Brown, Substitute Trustees, dated May 4, 1990[.]" (ECF No. 2-6). According to that affidavit, the debt owed as of March 3, 2011, was

4

$1,112,745.38, with interest continuing to accrue at a rate of $152.87 *per diem*. At around the same time, Citi Property filed in the circuit court an affidavit of default and right to foreclose, attesting that default occurred on April 10, 2007, and that notice of intent to foreclose was provided to the Hoangs on November 30, 2010. (ECF No. 2-8). Citi Property also filed an affidavit of note and note ownership, asserting that it "is the current holder of that certain Promissory Note from Thanh Hoang and Minh-Vu Hoang" and that "the copy of the Note filed in these proceedings is a true and accurate copy of the original note." (ECF No. 2-7).[2]

On or about April 27, 2012, the Hoangs were provided notice from the substitute trustees that a foreclosure sale of the Property is currently scheduled to take place on May 14, 2012, at 10:30 a.m. (ECF No. 2-3). In response, they commenced the instant action, proceeding *pro se*, against Mr. Rosen, the substitute trustees, the loan servicer, and the note holder, seeking to enjoin the foreclosure sale and quiet title to the Property. (ECF No. 1).[3] Concomitantly with the complaint, Plaintiffs filed a motion for a temporary restraining order,

---

[2] Plaintiffs attach a copy of the note that was filed, but it is largely illegible.

[3] Ms. Hoang purports to sign the complaint on behalf of her husband. While the validity of this signature may be questionable, the court deems it acceptable in this instance.

requesting that an emergency hearing be scheduled in advance of the foreclosure sale. (ECF No. 2). The complaint was accompanied by a letter in which Ms. Hoang acknowledges the requirement that she either pay the filing fee or file a motion for leave to proceed *in forma pauperis*, and asserts that she is currently incarcerated and "very limited in resource." (ECF No. 1-2).[4]

The complaint, which is inartfully drafted, appears to relate largely to the underlying promissory note. While Plaintiffs acknowledge that they executed the deed of trust on May 4, 1990, they contend that they never signed the note, and that the document filed in circuit court, which bears their signatures, is a forgery. On this basis, they challenge the authority of the substitute trustees to proceed with the sale, and seek, *inter alia*, rescission of the deed of trust on the theory that because the promissory note is invalid, "the Deed of

---

[4] Ms. Hoang is presently incarcerated at a federal correctional facility in Florida pursuant to a tax and bankruptcy fraud conviction in this court. In light of the fact that she has been granted *in forma pauperis* status in numerous prior cases (*see, e.g.,* Civ. No. DKC 11-3431, ECF No. 9, at 2 (noting that Ms. Hoang "is entitled to proceed *in forma pauperis* for the reasons stated in an order granting such relief in four other appeals")) and that she and her husband are both in bankruptcy, the court construes the cover letter as a motion for leave to proceed *in forma pauperis*. So construed, the motion will be granted.

Trust is null and void and without legal force[.]" (ECF No. 1, at 9).

Federal jurisdiction is based on alleged violations of the Fair Debt Collection Practices Act ("FDCPA").[5] According to Plaintiffs, "[a]ll defendants except Gary Rosen meet the statutory [definition] of 'debt collector . . . [and] are therefore [] covered by all sections of the FDCPA, regardless of whether they are also enforc[ing] security interests." (ECF No. 1, at 15). Plaintiffs specifically fault the substitute trustees for proceeding with the foreclosure sale on an invalid promissory note. They charge that the substitute trustees "are using unfair and [un]conscionable means to collect the debt . . . [by] demand[ing] interest, fee, charge and expense without having [an] authorized agreement creating the debt." (*Id*. at 16). They further contend that the substitute trustees violated the FDCPA "by furnishing deceptive affidavits to appoint [themselves] to enforce [their] power of sale" and by failing to ensure that all assignments of the allegedly nonexistent note were "valid and legal." (*Id*.).

Given the fact that various note holders have, since 2005, attempted to foreclose on the Property and that Plaintiffs apparently made payments on the debt evidenced by the note for

---

[5] Despite Plaintiffs' assertion to the contrary, there is no basis for diversity jurisdiction because Plaintiffs and multiple defendants are Maryland residents. *See* 28 U.S.C. § 1332(a)(1).

approximately fifteen years before they filed for bankruptcy, their present assertion that the note is invalid is dubious, at best. Nevertheless, their federal claims for violation of the FDCPA cannot be sustained because they are untimely. Pursuant to 15 U.S.C. § 1692k(d), "[a]n action to enforce liability created by [the FDCPA] may be brought in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurred." Here, the alleged FDCPA violations appear to have occurred at around the time the foreclosure action was commenced in the Circuit Court for Montgomery County. According to publicly available records, the foreclosure action was reopened by the substitute trustees on February 17, 2011; Mr. and Mrs. Hoang were served by no later March 1; and they both filed answers by March 24.[6] Thus, Plaintiffs were required to bring their FDCPA claims by no later than March 2012. Because they did not commence this action until on or about May 7, 2012, their federal claims are time-barred.[7]

---

[6] The docket further reflects that Plaintiffs have actively defended their interests in that case. Indeed, they were granted a hearing on their objection to final loss mitigation; the case was stayed for 120 days pending foreclosure mediation; and they filed multiple appeals to the Court of Special Appeals of Maryland.

[7] To the extent Plaintiffs intend to argue that the substitute trustees' letter, dated April 27, 2012, providing notice of the foreclosure sale constitutes a violation of the

8

Pursuant to 28 U.S.C. § 1367(c), the court has discretion to retain or dismiss nonfederal claims where, as here, the federal basis of the action is no longer applicable. District courts in the Fourth Circuit "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise discretion, courts consider factors such as the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id*. (citing *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1998)). Ultimately, supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id*. (quoting *Carnegie-Melon Univ*., 484 U.S. at 350).

The court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, which they presumably would be free to litigate in the foreclosure action in state court, if they have not already.

---

FDCPA, they have failed to state a claim.  Indeed, this notice was required by statute.  *See* Md. Code Ann., Real Prop. § 7-105.2(b).

For the foregoing reasons, it is this 10th day of May, 2012, by the United States District Court for the District of Maryland, ORDERED that:

1. The court construes the cover letter accompanying Plaintiffs' complaint (ECF No. 1-2) as a motion for leave to proceed *in forma pauperis*, and, so construed, said motion BE, and the same hereby IS, GRANTED;

2. Plaintiffs' complaint (ECF No. 1) BE, and the same hereby IS, DISMISSED, *sua sponte*, pursuant to 28 U.S.C. § 1915(e);

3. Plaintiffs' motion for temporary restraining order (ECF No. 2) BE, and the same hereby IS, DENIED as moot; and

4. The clerk is directed to transmit copies of this Memorandum Opinion and Order directly to Plaintiffs and CLOSE this case.

```
            _____/s/_____
            DEBORAH K. CHASANOW
            United States District Judge
```